IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| | | Case No.: CCB-19-36-6 |
| ROBERT HARRIS-HOWELL, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Robert Harris-Howell's Request for Review of Detention Order and Request for Immediate Hearing, ECF No. 407, filed on April 20, 2020. The government filed an opposition to the motion on April 22, 2020, ECF No. 413. On May 6, the Defendant filed a supplemental submission informing the Court that he has contracted COVID-19 and should be released immediately to his sister's custody and home "to recuperate in a setting where he has access to appropriate medical care; and . . . self-isolate and avoid further spread of the virus within the facility and in the community at large." Def.'s Supp. 1, ECF No. 423. The government filed a response on May 7. ECF No. 424. A hearing is not required. The motion is denied.

The defendant's motion and the government's opposition were filed after the Fourth Circuit's remand in *United States v. Creek*, No. 20-4251 (4th Cir. Apr. 15, 2020), ECF No. 402 ("*Creek* Remand Order"), but before Judge Blake's post-remand decision temporarily releasing Gary Creek, one of Harris-Howell's co-defendants, to the third-party custody of his sister, *United States v. Creek*, No. CCB-19-36, 2020 WL 2097692, at *1 (D. Md. May 1, 2020), ECF No. 421. The parties have not addressed the *Creek* decisions in their submissions.

On December 5, 2019, Harris-Howell was charged by superseding indictment with conspiracy to distribute and possess with intent to distribute controlled dangerous substances (280 grams or more of cocaine base) in violation of 21 U.S.C. § 846, conspiracy to possess a firearm in furtherance of a

drug trafficking crime in violation of 18 U.S.C. § 924(o), possession with intent to distribute a controlled dangerous substance in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm by a person having been convicted of a crime punishable by more than one year in violation of 18 U.S.C. § 922(g). On August 1, 2019, Harris-Howell was ordered detained after a hearing because Judge Gallagher found that his release would pose a danger to the community and that there were no release conditions that could reasonably assure the safety of the community. ECF No. 179. Judge Gallagher's reasons included: the nature of the alleged offenses, including possession of firearms in relation to drug trafficking; Harris-Howell's criminal history; his prior poor performance under supervision; and the recommendation of detention by Pretrial Services. *Id.*

Harris-Howell has moved for temporary release under 18 U.S.C. § 3142(i) due to the outbreak of COVID-19 in the facility where he is detained and the fact that he has now been diagnosed with the disease. The operative subsection of the Bail Reform Act provides:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142(i). In an application for temporary release under § 3142(i) due to COVID-19, the Fourth Circuit directed the Court to consider

> the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i).

*Creek* Remand Order 1. We now know these as the *Creek* factors. "The defendant bears the burden of demonstrating a compelling reason." *Creek*, 2020 WL 2097692, at *3 (citing *United States v. Clark*,

2

No. 19-40068-01-HLT, 2020 WL 1446895, at *2 (D. Kan. Mar. 25, 2020)).[1] Every court that has considered temporary release under § 3142(i) during the pandemic has "recognized that, in deciding whether temporary release is warranted, the court must still consider the danger to the community or risk of flight that would be posed by the defendant's release as analyzed under the factors set forth in 18 U.S.C. § 3142(g)." *Id.* at *3.

In applying the *Creek* factors, the Court starts with the current COVID-19 situation at the facility where the defendant is being held. Harris-Howell is detained at the Central Treatment Facility (CTF) within the D.C. Department of Corrections (DCDOC). The current conditions at CTF are detailed in a comprehensive report and recommendations prepared by the amici appointed by Judge Kollar-Kotelly in connection with the class action litigation against DCDOC. In issuing a temporary restraining order, Judge Kollar-Kotelly made a preliminary finding of "unreasonable risk" to the health of detainees and inmates and ordered certain corrective actions to be implemented immediately. *Banks v. Booth*, No. CV 20-849(CKK), 2020 WL 1914896, at *7, *13–14 (D.D.C. Apr. 19, 2020). It is hoped that those measures eventually will reduce the rate of infection inside the jail, but the number of positive tests has continued to increase since Judge Kollar-Kotelly's order. As of yesterday, there were 160 detainees and 72 staff members in DCDOC who have tested positive. Public Safety Agency COVID-19 Case Data, https://coronavirus.dc.gov/page/public-safety-agency-covid-19-case-data, last visited May 8, 2020. Indeed, Harris-Howell tested positive for COVID-19 this week. The

---

[1] Some courts have followed a four-factor test set forth in *United States v. Clark*, 2020 WL 1446895, at *3 (evaluating whether a compelling reason for temporary release existed based on "(1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others"). *E.g.*, *United States v. Green*, No. 19-CR-539-CCB-1, 2020 WL 1873967, at *3 (D. Md. Apr. 15, 2020); *United States v. Boatwright*, No. 19-CR-301-GMN-DJA, 2020 WL 1639855, at *5 (D. Nev. Apr. 2, 2020); *United States v. Santana*, No. 19-CR-251, 2020 WL 1692010, at *4 (M.D. Pa. Apr. 7, 2020).

potential risk of exposure to the virus that existed when his counsel filed the motion for release has now materialized into a reality.

The Court next considers Harris-Howell's existing medical conditions and the severity of the risk that COVID-19 poses to him. Harris-Howell asserts that he has severe allergies and asthma. He has not provided any medical records to support these assertions, and his counsel has confirmed that he is not asking the Court to obtain his medical records from the jail. In the Pretrial Services Report prepared last summer, Harris-Howell reported that "he is in excellent physical health with no medical problems," which his girlfriend verified at the time. It is true that the Centers for Disease Control and Prevention (CDC) advise that "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19."[2] But here, there are no medical records before the Court that support Harris-Howell's claim that he has asthma. Nor are there pre-pandemic statements by Harris-Howell or his family that he has asthma. Without any evidence to support his medical condition, the Court is unable to consider how severe his asthma is and how it may impact his recovery. By contrast, his co-defendant, Gary Creek, who was not COVID-19 positive, set forth evidence of "multiple medical conditions that put him at higher risk of serious illness or death if he contracts the COVID-19 disease," including "reduced mobility from cervical and thoracic spine disease and related left hemiparesis, steroid-dependent asthma, hypertension, depression and anxiety." *Creek*, 2020 WL 2097692, at *2. In support of his claims, Creek submitted a letter opinion from a physician who estimated that Creek is "is likely to have 3 to 5 times the risk of dying from Covid-19 as someone his age who did not have these conditions." *Id.* While the Court does not believe a defendant must submit a letter opinion from a physician to obtain temporary release under § 3142(i), Harris-Howell has not provided any evidence to support his claim that he has asthma. In the context of a motion

---

[2] *See* Coronavirus Disease 2019 (COVID-19): People with Moderate to Severe Asthma, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html.

for temporary release during the pandemic, where the defendant bears the burden of proving a "compelling reason" for release, there must be some credible evidence of his medical condition, and here there is none.

The Court now balances the risk that COVID-19 poses to Harris-Howell against the other Bail Reform Act factors to decide whether the risk "rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i)." *Creek*, 2020 WL 2097692, at *3.  Harris-Howell is 28 years old and a lifelong resident of Baltimore.  His parents, sisters, brother, and infant child live here, and he maintains daily contact with them.  He has no recent employment history.  He reports no mental health or substance abuse history other than marijuana, which he last used five years ago.  He has prior criminal convictions for CDS possession (2011) for which he was found in violation of probation; possession with intent to distribute CDS and possession of a firearm in furtherance of a drug-trafficking crime (2012); and possession with intent to distribute CDS (2019), for which he was on probation when he allegedly committed these crimes.

The nature and circumstances of the offenses are very serious.  The government alleges that Harris-Howell and 15 co-defendants operated a drug-trafficking organization in and around the Darley Park area of Baltimore.  The alleged criminal activities of the members of the conspiracy include drug trafficking, unlawful possession of firearms, and acts of violence, including multiple shootings (one of which is charged).  Harris-Howell is not charged with an act of violence.  The weight of the evidence against Harris-Howell appears strong.  It includes controlled CDS purchases by federal agents, video surveillance, captured communications between the defendants regarding their illegal activities, and a video of Harris-Howell with a firearm in his lap, which he took on his cell phone.

Harris-Howell proposes that he live with his sister at her home on Perlman Place in Baltimore.  According to Google Maps, her address is located in the Darley Park area of Baltimore, the same neighborhood where Harris-Howell and his co-defendants allegedly committed these crimes.  Gov't

Opp'n 6. This is not a suitable residence. It stands in contrast to the approved residence in *Creek*, which was located outside of Baltimore City. *Creek*, 2020 WL 2097692, at *5.

Harris-Howell argues in his supplemental submission that isolating him and others with the virus on a separate unit at the jail is "not an effective disease containment strategy," because "the virus spreads through droplets to others" and air continues to flow outward from isolation rooms to the rest of the facility. Def.'s Supp. 7. Harris-Howell claims that if released, "he will interact with fewer people in the community than in the jail." *Id.* at 8. As stated above, he has not identified a suitable residence, and even if he had, there is no evidence before the Court to conclude that Harris-Howell's release to a suitable third-party custodian at a suitable location would be safer for the community than his continued isolation at the jail.

In his supplemental submission, Harris-Howell argues for the first time that he is being held in violation of the due process clause of the Fifth Amendment because he has not been provided adequate medical care. Def.'s Supp. 2 (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). He cites to a March 29, 2020 Fraternal Order of Police Department of Corrections Labor Committee Press Release and a March 28, 2020 CDC COVID-19 Protocol issued by the same organization, ECF No. 423-1, as well as a March 25, 2020 letter from counsel for the correctional officer's union to the Office of the Director of the D.C. Department of Corrections. In the Fraternal Order of Police documents, the correctional officers identify their concerns about the failure of the DCDOC to implement protections for inmates and correctional officers. Harris-Howell also cites to apparent deficiencies in prevention, testing, and access to medical care at the jail in March. Def.'s Supp. 5–6. What Harris-Howell does not offer, however, is argument or evidence that he is not currently receiving adequate medical care.

Without any information specific to Harris-Howell, the Court's only source of credible information about the medical care and conditions for individuals who have COVID-19 is what was reported to Judge Kollar-Kotelly by the amici in *Banks* in mid-April. It was reported that inmates with

the virus were isolated, prohibited from showering or cleaning their cells, unable to call family or their attorneys, and could not change their soiled clothes, linens, or masks while infected. *Banks*, 2020 WL 1914896, at *21–22 (Amicus Curiae Report). It was also reported that individuals who have tested positive for COVID-19 receive visits from medical staff "at least twice per day to check temperatures, vital signs, and conduct assessments if indicated." *Id.* at *26 (Amicus Curiae Report). The *Banks* opinion does not address the adequacy of the medical care for individuals who have COVID-19, and there is no evidence before the Court that the medical care being provided to Harris-Howell is inadequate. Under these circumstances, the Court must defer to Judge Kollar-Kotelly who continues to preside over the lawsuit against the jail, and she, with "the help of able advocates, their respective experts, and [her] own independent inspectors," is best positioned to monitor the circumstances and decide whether the conditions at CTF, including access to adequate medical care, give rise to a violation of the Fifth Amendment due process clause. *See United States v. Hernandez*, No. PX-19-158, slip op. 4 (D. Md. Apr. 29, 2020). If Harris-Howell's medical condition deteriorates and there is evidence that he is not receiving adequate medical care, the Court would welcome that information.

In conclusion, Harris-Howell has not met his burden of establishing a compelling reason for temporary release. The reasons for the initial detention order remain strong. While COVID-19 does change the analysis, and Harris-Howell has tested positive, there is insufficient evidence before the Court of a medical condition that would raise his risk of serious illness or death now that he has contracted the disease. Even if there were such evidence, the proposed residence where he would live temporarily is not suitable. Further, even if the location were suitable, Harris-Howell has not identified all of the residents in the home, whether they have underlying health conditions, and how they would take measures to prevent the spread of the virus.

8

For these reason, Robert Harris-Howell's Request for Review of Detention Order and Request for Immediate Hearing, ECF No. 407, is denied.

 May 8, 2020  
Date

         /S/         
Deborah L. Boardman  
United States Magistrate Judge